Alexander Kolodin (AZ #030826)
Veronica Lucero (AZ #030292)
DAVILLIER LAW GROUP, LLC
4105 North 20th Street, Suite 110
Phoenix, AZ 85016
Tel: (602) 730-2985
akolodin@davillierlawgroup.com
vlucero@davillierlawgroup.com
phxadmin@davillierlawgroup.com (file copies)

Nicole C. Pearson* (CA #265350)
Rachel L. Dreher * (FL #32092)
CITIZEN AG
111 NE 1st Street, 8th Floor
Miami, FL 33132
Tel: (442) 272-5526
nicole@citizenag.org
rachel@citizenag.org
*pro hac vice forthcoming

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| 1789 FOUNDATION INC., d/b/a CITIZEN AG, and LINDSEY GRAHAM, <br><br> *Plaintiffs*, <br><br> v. <br><br> ADRIAN FONTES, in his official capacity as Secretary of State, <br><br> *Defendant*. | Case No. _____ <br><br> **VERIFIED COMPLAINT AND REQUEST FOR INJUNCTION** <br><br> 1. **Injunctive Relief** <br> 2. **Declaratory Judgment** <br> 3. **Violations of the National Voter Registration Act, 52 U.S.C. § 20501 *et seq.*** |

Plaintiffs 1789 Foundation, Inc., d/b/a Citizen AG ("Citizen AG"), and Lindsey Graham (collectively, "Plaintiffs"), by and through undersigned counsel, file this Verified Complaint

for declaratory and injunctive relief against Defendant Adrian Fontes in his official capacity as Arizona's Secretary of State on the grounds set forth as follows:

<u>**NATURE OF THE ACTION**</u>

This is a voting rights action that seeks to enforce the public inspection provision and list maintenance requirements of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501 *et seq*. Under the NVRA, Arizona is required to maintain accurate and current voter registration lists by removing ineligible voters based on change-of-residence grounds. The NVRA provides that change-of-residence grounds compelling a voter's removal arise when the state either (1) receives written confirmation from a registrant that he or she has moved—in which case the state must immediately remove the voter—or when (2) a registrant does not respond to a confirmation notice and thereafter fails to vote in the next two federal elections.

From the time the confirmation notices are sent until the day after the second of two federal elections accrues, voters who do not respond to the notices remain registered, but their registration statuses are switched from "active" to "inactive." This is known as the "statutory waiting period," which exists to protect against any unintentional infringement upon these registrants' right to vote.

If, however, a registrant is still inactive after two federal elections because he or she failed to respond to the confirmation notice and either (1) failed to contact the registrar confirming his or her residency or (2) failed to vote in either of the next two federal elections, the inactive registrant must be removed from the voter rolls to ensure that active and eligible voters' fundamental right to vote is not undermined by vote dilution.

The Election Assistance Commission's publication of the Election Administration and Voting Survey ("EAVS") biennial reports make it simple to determine whether a registrant is either (1) incorrectly registered as an "inactive" voter or (2) unlawfully registered to vote in Arizona. Based on the EAVS reports—all of which consist of the Secretary of State's own statements and admissions—Plaintiffs can ascertain (1) how many registrants received confirmation notices and did not respond, (2) how many registrants Arizona removed after two

federal elections, and (3) the reasons for each registrant's removal. Taken together, and as more fully explained below, there are *at least* 1,222,367[1] Arizona registrants who received but did not respond to confirmation notices and who did not vote in either of the last two federal elections, which renders these voters ineligible based on change-of-residence grounds under the NVRA—yet all 1,222,367 voters remain registered to vote on November 5, 2024.

While it is possible that all 1,222,367 voters could have reactivated their registration statuses after failing to respond to their confirmation notices in 2020, the possibility is so low that it is statistically impossible to calculate. Nevertheless, and despite the all-but-certain fact that Arizona has violated the NVRA's list maintenance provisions, Citizen AG submitted a public records request to Defendant on October 4, 2024, to obtain information about the missing variable: the number of Arizona registrants who did not respond to confirmation notices but voted in either the 2020 General Election or 2022 Midterm Election. Defendant responded to Citizen AG's request on October 7, 2024, stating, "The Secretary of State's Office does not have any records responsive to your request." *See* Decl. of Eric Scharfenberger ¶ 16.[2]

Plaintiffs now commence this action because Defendant has violated 52 U.S.C. § 20507(i) by refusing to make available every responsive record Citizen AG requested and for violating the NVRA's requirement that "[e]ach State shall maintain for at least 2 years and shall make available for public inspection" and copying "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," as evidenced by Defendant's October 7 response to Citizen AG's records request.

---

[1] The figure of 1,222,367 voters is calculated from the following formula: # of confirmation notices sent − # of responses received − # of undeliverable notices − # moved-out-of-district removals after 2 elections − # of failure-to-return-confirmation-notice removals after 2 elections.

[2] This document refers to the Declaration of Eric Scharfenberger (Oct. 28, 2024) appended to Plaintiffs' Motion for a Temporary Restraining Order or, in the Alternative, Preliminary Injunction filed simultaneously herewith.

Defendant has also violated 52 U.S.C. § 20507(a)(4), which provides that "each State shall…conduct a general program that makes a reasonable effort to remove…from the official lists of eligible voters" the names of voters who have become ineligible by reason of…change of residence. As explained above and as detailed more thoroughly below, *at least* 1,222,367 registered inactive voters remain on Arizona's voter rolls despite failing to respond to their confirmation notices sent more than two federal elections ago.

Because Defendant cannot produce records evincing that each one of the 1.2 million registrants in dispute either (1) reactivated his or her registration status by contacting the registrar prior to casting a ballot or (2) has already been removed for any reason, it must be presumed that voters who were required to be removed have instead been left on the rolls. Yet removals are mandatory under both federal and Arizona law. *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 767 (2018) ("federal law makes this removal mandatory") (citing 52 U.S.C. § 20507(d)(3)); A.R.S. § 16-166(E).

Although the NVRA generally prohibits systemic voter-roll cleanup within 90 days of an election, 52 U.S.C. § 20507(c)(2)(A), certain categories of unlawful voters are excepted (the "Excepted Registrants"), *id*. at (c)(2)(B)(i). The Excepted Registrants are those who have requested to be removed, those who are ineligible by reason of criminal conviction or mental incapacity (as provided by state law), and those who have died.

Due to the impending federal election that will take place on November 5, 2024, and the imminent and actual harm that will result absent emergency injunctive relief, Plaintiffs also file along with this Verified Complaint an emergency motion for a temporary restraining order and preliminary injunction and a memorandum of points and authorities in support thereof.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, and in particular 52 U.S.C. §§ 20507 and 20510(b).

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and because a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

3.      The allegations raised herein pertain to one or more violations of the NVRA that occurred within 30 days of a federal election, and therefore any notice-related conditions precedent to initiating this action are waived pursuant to 52 U.S.C. § 20510(b)(3).

## PARTIES

4.      Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

5.      Plaintiff Citizen AG is a nonprofit entity organized under the laws of Florida and dedicated to educating Americans about their rights and advocating, protecting, and preserving American civil liberties and constitutional rights through an array of means that includes, without limitation, engaging in litigation. Citizen AG and co-Plaintiff Lindsey Graham seek declaratory and injunctive relief pursuant to 52 U.S.C. § 20510(b)(1), which authorizes a private citizen to bring suit to enforce the NVRA, and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

6.      Plaintiff Lindsey Graham is an Arizona resident, a Citizen AG member, and an active registered voter of Maricopa County whose fundamental right to vote is being undermined directly and proximately because of Defendant's noncompliance with the NVRA.

7.      Defendant Adrian Fontes is the Arizona Secretary of State. The NVRA requires that "[e]ach State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this Act." 52 U.S.C. § 20509. Arizona law establishes that the secretary of state is "the chief state election officer for purposes of the National Voter Registration Act of 1993." ARS § 16-142(A). As the Arizona Secretary of State, Adrian Fontes is being sued in his official capacity.

## STATUTORY BACKGROUND

8. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

9. The NVRA provides that "each State shall…conduct a general program that makes a reasonable effort to remove…from the official lists of eligible voters" the names of voters who have become ineligible by reason of death or a change of residence. 52 U.S.C. § 20507(a)(4).

10. With respect to voters who have changed residence, the NVRA provides that no registration may be cancelled unless the registrant either (1) confirms this fact in writing or (2) fails to timely respond to an address-confirmation notice described by the statute *and* has not voted within the applicable statutory period. 52 U.S.C. § 20507(d)(1).

11. A confirmation notice is a "postage prepaid and pre-addressed return card, sent by forwardable mail," that asks the registrant to confirm his or her current address. *Id.* at (d)(2).

12. If a registrant fails to respond to a confirmation notice and then fails to vote (or contact the registrar) during the statutory waiting period, which extends from the date of the notice through the next two federal elections, the registration is cancelled. *Id.* at (d)(1)(B). These cancellations are mandatory under both federal and Arizona law. *Husted*, 584 U.S. at 767 ("federal law makes this removal mandatory"); A.R.S. § 16-166(E).

13. Under both federal and Arizona law, a voter registration is referred to as "inactive" during the statutory waiting period, which begins when the registration notice is sent and concludes at 12:01 a.m. on the day immediately following the second consecutive federal election cycle. *See* 52 U.S.C. § 20507(d)(1)(B); 11 C.F.R. § 9428.2(d); A.R.S. § 16-166(E).

14. Applicable here, the relevant statutory waiting period began prior to the November 3, 2020, General Election because all confirmation notices were sent to Arizona voters prior to the close of voter registration for the 2020 General Election and concluded at 12:01 a.m. on November 9, 2022, which is the day immediately after the November 8, 2022, Midterm Election—the second of two consecutive federal elections.

15. Under both federal and Arizona law, a voter with an inactive registration may still vote on election day so long as the inactive voter provides proof of residency prior to doing so. 52 U.S.C. § 20507(d)(2)(A); A.R.S. § 16-166(E). Accordingly, inactive voters are still registered voters.

16. In June of each odd-numbered year, the U.S. Election Assistance Commission ("EAC") is required by law to report to Congress its findings relating to state voter registration practices. 52 U.S.C. § 20508(a)(3).

17. Federal regulations require states to provide various kinds of NVRA-related data to the EAC for use in its biennial report. 11 C.F.R. § 9428.7.

18. The NVRA grants the public the right to request information concerning voter list maintenance. It provides: "Each State shall maintain for at least 2 years and shall make available for public inspection" and copying "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i).

19. Though not purporting to be an exhaustive list, section 20507(i)(2) provides specific examples of responsive records: "The records maintained…shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made." 52 U.S.C. § 20507(i)(2).

20. The NVRA provides that "[e]ach State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter." 52 U.S.C. § 20509. Arizona law designates the secretary of state as this official. A.R.S. § 16-142(A)(1).

21. The NVRA affords a private right of action to any "person who is aggrieved by a violation" of the Act. 52 U.S.C. § 20510(b)(1). Ordinarily, a private litigant is required to send notice of a violation to the chief State election official 90 days prior to commencing a lawsuit. *Id*. § 20510(b)(1), (2). However, "[i]f the violation occurred within 30 days before the date of

an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State…before bringing a civil action….” *Id*. § 20510(b)(3).

22.     Because the violations complained of herein occurred within 30 days of the upcoming federal election on November 5, 2024, the notice requirement is waived.

## STATEMENT OF FACTS

23.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

### Background of the NVRA

24.     The NVRA has four main objectives: increasing voter registration, enhancing voter participation, protecting the integrity of elections, and ensuring the accuracy and currency of voter rolls. *See* 52 U.S.C. § 20501(b).

25.     To achieve the latter goal, the NVRA requires states to “conduct a general program that makes a reasonable effort to remove the names” of voters who are ineligible “by reason of” death or a change in residence. 52 U.S.C. § 20507(a)(4).

26.     The NVRA contains two express requirements before a state can remove a name from its voter rolls based on change of residence. 52 U.S.C. § 20507(b)-(d). These requirements exist to protect the fundamental right to vote of those who otherwise could potentially be removed improperly.

27.     On the other hand, Congress was also cognizant of the importance of protecting eligible voters’ fundamental right to vote against vote dilution. For that reason, the NVRA makes it mandatory for states to remove voters based on change-of-residence grounds when two requirements are met.

28.     The first and most important of the two requirements is a prior-notice obligation. The NVRA only permits the removal of a registrant’s name from the rolls based upon change-of-residence grounds in situations when (1) the registrant confirms in writing that he or she has moved or (2) the registrant fails to return the postage prepaid and pre-addressed “return card”

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

included with the confirmation notices the states send via forwarded mail to registrants suspected to have moved out of the district in which they are registered.

29.     These return cards provide explicit instructions as to what a registrant must do to remain on the voter rolls when he or she receives a confirmation notice but has not moved: the voter must either return the card confirming his or her residence or vote in at least one of the next two federal elections. 52 U.S.C. § 20507(d)(2)(A).

30.     For the benefit of those who have moved, the return card also contains "information concerning how the registrant can continue to be eligible to vote." 52 U.S.C. § 20507(d)(2)(B).

31.     These safeguards protect against the improper removal of a registered voter on change-of-residence grounds; however, the fundamental right to vote must also be protected for those who remain legally registered. To accomplish this, the NVRA requires the removal of any voter who (1) fails to return the card confirming his or her residence and (2) does not vote in at least one of the next two general federal elections.

32.     The removal of voters who do not return the card confirming their residence and who do not vote in either of the next two federal elections is *mandatory*. 52 U.S.C. § 20507(d)(1)(B). *Husted*, 584 U.S. at 767 ("federal law makes this removal mandatory"); A.R.S. § 16-166 (E).

### The Election Administration Commission's EAVS Reports

33.     The EAC is an independent federal agency dedicated to improving the administration of elections across the country.

34.     Since 2004, the EAC has furthered its objectives by conducting the Election Administration and Voting Survey following each federal general election.

35.     The EAVS asks all states and U.S. territories to provide data about the ways Americans vote and how elections are administered.

36.     The EAVS is sent to the chief election official of each state, who then provides responses to the survey's questions that cover various aspects of the state's election administration.

37.     The EAVS responses the Arizona Secretary of State provided for both the 2018 and 2022 EAVS include the following information:

 i.  how many confirmation notices the state sent via forwarded mail,

 ii.  how many voters responded to the notices and whether the response indicates that a voter has or has not moved,

 iii.  the number of confirmation notices that were returned undeliverable,

 iv.  how many voters are listed as active/inactive,

 v.  the number of registrants the state removed from its voter rolls,

 vi.  the reasons for removal, and

 vii.  how many voters were removed for each respective reason.

38.     The most recent EAVS report was published in June 2023 ("2022 EAVS Report"). The 2022 EAVS Report contains data and information collected between November 4, 2020, and November 8, 2022, and constitutes the second of the two federal-election-cycle statutory waiting periods.

39.     The second most recent EAVS report, which contains information collected between November 7, 2018, and November 3, 2020, and constitutes one federal election cycle prior to the federal 2020 General Election, was published in August 2021 (the "2020 EAVS Report").

40.     Both reports are relevant insofar as the 2020 EAVS Report contains the number of confirmation notices Arizona reported sending to registrants via forwarded mail, the number of responses it received indicating the voter had not moved, and the number of responses it received from voters who confirmed in writing that they had, in fact, moved out of the district and were therefore no longer eligible to remain registered.

41.    The 2022 EAVS Report is relevant because it contains information about the number of registrants that Arizona removed after two federal elections, the reasons for the removals, and how many registrants were removed for each of the enumerated reasons.

42.    Both the 2020 and 2022 EAVS Reports also contain information regarding the number of inactive[3] registrants Arizona maintained on its voter rolls.

**Arizona's Self-Reported Voter-Related Statistics**

43.    Defendant's[4] responses to the 2020 EAVS indicate that Arizona sent 2,480,620 registered voters confirmation notices (including return cards) via forwarded mail prior to the 2020 General Election.

44.    Of the 2,480,620 confirmation notices sent to registered Arizona voters:

   i.   75,275 registrants responded by confirming that they had *not* moved,

   ii.  422,319 registrants confirmed that they *had* moved out of the district, and

   iii. 328,161 notices were returned to the state as undeliverable.

45.    Based on these figures, *at least* 1,654,865 Arizona voters who received confirmation notices did not respond, and their registration statuses were switched from "active" to "inactive" prior to the 2020 General Election.

46.    Arizona also reported to the EAC that it removed 81,637 registrants who had moved out of state and 175,284 registrants (256,921 total) for failing to return confirmation notices after the 2022 Midterm Election.

---

[3] A registrant is either active, inactive, or removed from the voter rolls. For reasons unknown, the EAC creates a category for "inactive" voters (defined as voters who received a confirmation notice and did not respond) and another category for "voter status unknown," which is also defined as voters who received a confirmation notice and did not respond. Thus, the total number of "inactive" voters is the total of voters listed under both categories, as they are indistinguishable from one another.

[4] Plaintiffs are aware that Katie Hobbs served as Arizona Secretary of State from January 7, 2019, through January 2, 2023. Thus, reference to actions taken by "Defendant" should be construed to mean the secretary of state generically and not to Adrian Fontes as an individual.

VERIFIED COMPLAINT

47.    In taking the 1,654,865 registrants who did not respond to their confirmation notices before the 2020 General Election and subtracting the 256,921 voters Arizona reported removing after the 2022 Midterm Election, there still remains a combined total of 1,397,944 voters who Arizona was required to remove based on change-of-residence grounds the day after the 2022 Midterm Election—which was 721 days ago, on November 9, 2022.

48.    Plaintiffs then even further reduced *all* 432,498 voters Arizona removed following the 2022 Midterm Election, irrespective of the reason for removal, to see if those numbers would balance the discrepancy between the number of voters subject to removal and the number of voters Arizona actually reported removing, as set forth below:

| | |
|---|---|
| Moved Out of State | **81,637*** |
| Failure to Return Confirmation Notice | **175,284*** |
| Voter Deceased | **108,103** |
| Voter's Request | **50,092** |
| Felony or Conviction | **15,172** |
| Mental Incompetence | **717** |
| Other | **1,493** |
| Not Categorized | **0** |
| **TOTAL:** | **432,498** |

\* These numbers (totaling 256,921) were previously accounted for above.

49.    But even adding the 175,577 voters who were removed for other reasons to the number of voters who moved out of state or failed to return their confirmation notices (again, totaling 256,921)—for a grand total of 432,498—does not change the fact that Arizona has failed to satisfy its NVRA list maintenance obligations.

50.    At bottom, 1,654,865 voters did not respond to confirmation notices before the 2020 General Election, and only 432,498 voters were removed following the 2022 Midterm Election. The only means by which the remaining 1,222,367 registrants could stay on the voter

rolls today absent Arizona violating the NVRA is if each one of the 1,222,367 registrants[5] either:

      i.  contacted the registrar and confirmed in writing that the registrant still resides within the district he or she is registered to vote or

      ii.  voted in either the 2020 General Election or the 2022 Midterm Election.[6]

51.    Because this is statistically unlikely, if not impossible, Citizen AG requested public records to determine how many of the 1,222,367 registrants reactivated their registration statuses by voting prior to November 9, 2022.

**Citizen AG's Public Records Request Pursuant to 52 U.S.C. § 20507(i)**

52.    On October 4, 2024, Citizen AG submitted a public records request seeking records, documents, and/or information Defendant is required to maintain and make available for public inspection upon request pursuant to the NVRA's public inspection provision. *See* 52 U.S.C. § 20507(i).

53.    In particular, Citizen AG's request sought records concerning voter history and information as to the number of inactive voters who reactivated their registration statuses by way of casting a vote in the 2020 General Election or 2022 Midterm Election—and all information Citizen AG requested is indeed subject to the NVRA's public-disclosure provision. *See, e.g.*, *Voter Reference Found., LLC v. Torrez*, No. CIV 22-0222 JB/KK, 2024 U.S. Dist. LEXIS 58803, at *435-36 (D.N.M. Mar. 29, 2024) (holding that the New Mexico Secretary of State's Office violated the NVRA by failing to produce "[c]urrent voter registration data, ***including voter history***, for all active, inactive, suspended, and cancelled status voters") (emphasis added).

54.    On October 7, 2024, Defendant responded to Citizen AG's records request by closing the request without providing any documents and stating that "[t]he Secretary of State's

---

[5] This is the bare minimum of potentially ineligible registrants presently registered to vote in Arizona.

[6] To vote in either of the two federal elections, however, the inactive voter must have first confirmed or affirmed his or her residency as a condition precedent to receiving a ballot.

Office does not have any records responsive to your request." *See* Decl. of Eric Scharfenberger at ¶¶ 16-17.

55.     As of the date of this filing, Defendant has not produced any records responsive to Citizen AG's request, and based on the aforesaid statement, Defendant has made it clear that Arizona will not provide any documents. *Id.* at ¶ 20.

56.     Defendant has violated the NVRA by failing to produce responsive records that the NVRA compels states to make available for public inspection. *See* 52 U.S.C. § 20507(i). And because Defendant's office provided the response on October 7, 2024, which is 29 days prior to the election, there is no notice required as a condition precedent to initiating this action. *Id.* § 20510(b)(3).

57.     In addition to failing to comply with the NVRA's public-disclosure provision regarding the aforesaid documents, Defendant also violated the NVRA's public-disclosure provision a second time when stating that "[t]he Secretary of State's Office does not have any records responsive to your request," Decl. of Eric Scharfenberger at ¶ 17, as the NVRA requires Defendant to maintain such records for at least two years. 52 U.S.C. § 20507(i)(1).

## PLAINTIFFS' INTERESTS

58.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

59.     Plaintiff Citizen AG's mission is to educate Americans about their rights and preserve our civil rights and liberties in the courts. The organization fulfills its mission through public records requests and litigation, among other means.

60.     Citizen AG is supported in its mission by tens of thousands of individuals across the nation. An individual becomes a member of Citizen AG by making a financial contribution, in any amount, to the organization. Members' financial contributions are by far the single most important source of income to Citizen AG and provide the means by which the organization finances its activities in support of its mission. Citizen AG in turn represents the interests of its members.

61.     Over the past several years, Citizen AG's members have become increasingly concerned about the state of the nation's voter registration rolls, including whether state and local officials are complying with the NVRA's voter list maintenance obligations. They are concerned that failing to comply with the NVRA's voter list maintenance obligations impair the integrity of elections by increasing the opportunity for ineligible voters or voters intent on fraud to cast ballots.

62.     Defendant's failure to comply with Arizona's NVRA voter list maintenance obligations burden the federal and state constitutional rights to vote of all individual Citizen AG members who are lawfully registered to vote in Arizona by undermining their confidence in the integrity of the electoral process, discouraging their participation in democracy, and instilling fear that their legitimate votes will be nullified or diluted.

63.     Protecting the voting rights of Citizen AG members who are lawfully registered to vote in Arizona is germane to Citizen AG's mission. It also is well within the scope of reasons why members of Citizen AG join the organization and support its mission.

64.     Because the relief sought herein will inure to the benefit of Citizen AG members who are lawfully registered to vote in Arizona, neither the claims asserted nor the relief requested requires the participation of Citizen AG's individual members.

65.     In response to the concerns of its members, Citizen AG commenced a nationwide program to monitor state and local election officials' compliance with their NVRA list maintenance obligations. As part of this program, Citizen AG uses public records laws to request and receive records and data from jurisdictions across the nation about their voter list maintenance efforts. It then analyzes these records and data and publishes the results of its findings to the jurisdictions, to its members, and to the general public.

66.     Citizen AG's concerns with Arizona's list maintenance practices led it to send the October 2024 correspondence described in this complaint and to request documents relating to the state's list maintenance practices and to analyze the state's responses.

15

67. Citizen AG's concerns also led it to analyze Arizona's registration rates, removal rates, confirmation notice statistics, and inactive rates.

68. Citizen AG has expended substantial resources, including staff time, investigating Defendant's failure to comply with his NVRA voter list maintenance obligations, communicating with Arizona officials and concerned members about Defendant's failure, and researching statements made by Defendant in his correspondence.

69. The resources expended by Citizen AG to investigate, address, research, and counteract Defendant's failure to comply with their NVRA voter list maintenance obligations are distinct from and above and beyond Citizen AG's regular, programmatic efforts to monitor state and local election officials' NVRA compliance.

70. Were it not for Defendant's failure to comply with Arizona's NVRA voter list maintenance obligations, Citizen AG would have expended these same resources on its regular, programmatic activities or would not have expended them at all. Instead, it diverted its resources to counteract Defendant's noncompliance and to protect members' rights.

## FIRST CLAIM FOR RELIEF
### VIOLATION OF THE NVRA, 52 U.S.C. § 20507(i)
### Failure to Make Records Available for Inspection
### (*Citizen AG against Secretary Fontes*)

71. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

72. On or about October 4, 2024, Citizen AG submitted a public records request to Secretary Fontes' office pursuant to 52 U.S.C. § 20507(i) and in full compliance with the provisions of A.R.S. § 39-121.

73. Citizen AG's request sought records or information concerning, *inter alia*, the number of inactive voters who became inactive by virtue of their failure to respond to a confirmation notice the state sent via forwarded mail prior to the 2020 General Election and thereafter and who voted in either the 2020 General Election or 2022 Midterm Election.

74. On or about October 7, 2024, Defendant responded to Citizen AG's public

records request, stating "[t]he Secretary of State's Office does not have any records responsive to your request." Decl. of Eric Scharfenberger at ¶ 17.

75.     The NVRA requires Defendant to retain and make available for public inspection, *for at least two years*, **all** *records* concerning voter list maintenance activities, such as removals, confirmations of voter eligibility, and updates to voter registration lists, as well as any records regarding the implementation of programs and activities conducted to ensure the accuracy and currency of official lists of eligible voters. *See* 52 U.S.C. § 20507(i).

76.     The 2022 Midterm Election took place on November 8, 2022, and therefore records regarding the 2022 Midterm Election are less than two years old. Pursuant to 52 U.S.C. § 20507(i), Arizona is required to have, at a minimum, the records that Citizen AG requested in its October 4, 2024, public records request pertaining to the 2022 Midterm Election.

77.     Citizen AG's request sought records from the 2022 Midterm Election, including the number of people who voted in the 2022 Midterm Election even though they had previously received and failed to respond to a confirmation notice prior to the 2020 General Election.

78.     The NVRA's public inspection provision is a floor, not a ceiling, insofar as Arizona is required to maintain records for at least two years; there is no prohibition concerning Arizona's maintenance of records responsive to Citizen AG's request for more than two years, and thus Arizona could—and should—have records regarding the 2020 General Election that are responsive to Citizen AG's October 4 public records request.

79.     The NVRA compels states to remove ineligible voters when they fail to vote for two consecutive federal elections after receiving and failing to respond to confirmation notices sent to the registrants via forwarded mail.

80.     Removals or voter registration cancellations based on change-of-residence grounds are mandatory under both federal and Arizona law. *Husted*, 584 U.S. at 767; A.R.S. § 16-166 (E).

81.     No exception exists that would otherwise exempt this information from the public inspection provisions of the NVRA.

82.    Defendant's failure to produce or otherwise make available for inspection the records Citizen AG sought in its October 4, 2024, request violates the NVRA's public inspection provision that requires Arizona to maintain and make accessible the aforesaid records for a minimum of two years.

83.    As a direct and proximate result of Defendant's actions, Citizen AG has expended substantial resources, including staff time, investigating Defendant's failure to comply with Arizona's NVRA voter list maintenance obligations, communicating with Arizona officials and concerned members about Defendant's failure, and researching statements made by Defendant in his correspondence.

84.    The resources expended by Citizen AG to investigate, address, research, and counteract Defendant's failure to comply with their NVRA voter list maintenance obligations are distinct from and above and beyond Citizen AG's regular, programmatic efforts to monitor state and local election officials' NVRA compliance.

85.    Were it not for Defendant's failure to comply with their NVRA voter list maintenance obligations, Citizen AG would have expended these same resources on its regular, programmatic activities or would not have expended them at all. Instead, Citizen AG diverted its resources to counteract Defendant's noncompliance and to protect members' rights.

86.    Citizen AG has been deprived of the opportunity to inspect and review records concerning voter list maintenance, which is critical towards its mission and frustrates its purpose of preserving constitutional rights and civil liberties, including those of its members such as Ms. Graham, who herself is directly injured as a registered and eligible Arizona voter.

87.    Defendant's failure to comply with the NVRA's public inspection provision has caused harm, as explained above, and Defendant will continue to refuse to comply with the NVRA and further injure Citizen AG absent the injunctive relief requested herein.

## SECOND CLAIM FOR RELIEF
**VIOLATION OF THE NVRA, 52 U.S.C. § 20507(i)**
**Failure to Maintain Records for Minimum of 2 Years**
(*Citizen AG and Lindsey Graham against Defendant Fontes*)

88. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

89. On October 7, 2024, and in response to Citizen AG's October 4 public records request, Defendant stated that "[t]he Secretary of State's Office does not have any records responsive to your request."

90. Defendant's aforesaid statement is evidence that Defendant has violated the NVRA's requirement that compels Arizona to maintain, *for at least two years,* **all** *records* concerning voter list maintenance activities, such as removals, confirmations of voter eligibility, and updates to voter registration lists, as well as any records regarding the implementation of programs and activities conducted to ensure the accuracy and currency of official lists of eligible voters as required under 52 U.S.C. § 20507(i).

91. Both Citizen AG and Ms. Graham, as an individual and eligible registered Arizona voter and Citizen AG member, have been deprived of the opportunity to inspect and review records concerning voter list maintenance, which is critical to ensuring transparency and accountability in the administration of Arizona's voter rolls. Arizonans, including Ms. Graham, are entitled to see this information *prior* to the election.

### THIRD CLAIM FOR RELIEF[7]
**VIOLATION OF THE NVRA, 52 U.S.C. §§ 20501(b), (c), & (d).**
**Failure to Maintain Accurate/Current Voter Registration Lists**
**(*Citizen AG and Lindsey Graham against Defendant Fontes*)**

92. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

93. The NVRA makes mandatory and imposes a non-discretionary duty upon Defendant to establish a removal-from-registration program that "makes a reasonable effort" to remove voters who become ineligible for reasons that include, without limitation, change-of-

---

[7] The allegations in this count are based on the information available to Plaintiffs. While it is possible that Defendant is in possession of documents that would obviate the need to allege this count, as set forth above, Defendant has refused to divulge such documents despite his legal obligation to do so.

VERIFIED COMPLAINT

residence grounds.

94.     At all times relevant, it is Defendant's obligation to "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(4).

95.     52 U.S.C. § 20507(d) is the provision that governs removals based "on the ground that the registrant has changed residence."

96.     Under subsection (d), a registrant becomes ineligible on change-of-residence grounds if the registrant "(i) has failed to respond to a notice" and "(ii) has not voted or appeared to vote…during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice."

97.     A registrant's failure to respond to a notice and failure to vote in either of the next two subsequent elections is evidence of a registrant's ineligibility based upon change-of-residence grounds.

98.     Defendant sent 2,480,620 registered voters confirmation notices (including return cards) via forwarded mail prior to the 2020 General Election.

99.     A total of 497,594 registrants responded to the confirmation notices.

100.    Of the 497,594 responses, 75,275 registrants responded by confirming that they had not moved.

101.    Registrants who respond and confirm they have not moved do not have a change in registration status and remain listed as active registered voters.

102.    Of the 497,594 responses, 422,319 registrants confirmed that they had moved out of the district.

103.    Registrants who respond confirming they have moved out of the district in which they are registered do not become inactive; instead, the NVRA compels their immediate removal based on change-of-residence grounds, which is proven by way of the registrant's confirmation in writing of the same.

104.    Of the 2,480,620 confirmation notices sent, 328,161 notices were returned to the state as undeliverable.

105.    The 328,161 registrants and intended recipient-registrants whose notices were returned undeliverable are ineligible and therefore *should* be switched to inactive based upon either a failure to respond or their failure to properly register to vote in compliance with A.R.S. § 16-166.

106.    Excluding those who responded confirming their residence, those who responded confirming they have moved, and the intended recipient-registrants whose confirmation notices were undeliverable, a total of 1,654,865 registrants received confirmation notices but did not respond prior to the 2020 General Election.

107.    A total of 1,654,865 registrants were therefore inactive based on their failure to respond as of the 2020 General Election.

108.    Following the conclusion of the statutory waiting period on November 9, 2022, Arizona removed 81,637 registrants who were ineligible based on change-of-residence grounds.

109.    Following the conclusion of the statutory waiting period on November 9, 2022, Arizona removed 175,284 registrants based on their failure to return a confirmation notice.

110.    Together, at the conclusion of the statutory waiting period on November 9, 2022, Arizona removed a total of 256,921 registrants of the 1,654,864 inactive registrants subject to removal absent reactivating their registration statuses before the conclusion of the statutory waiting period.

111.    A total of 432,498 voters were removed for reasons that not only included change-of-residence grounds and failing to return a confirmation notice but for reasons that also included the following categories: "Voter Deceased," "Voter's Request," "Felony or Conviction," "Mental Incompetence," and "Other."

112.    Even taking all removals, irrespective of the reason, and deducting all 432,498 removals from the 1,654,865 voters subject to removal absent voting in the 2020 General Election or 2022 Midterm Election, 1,222,367 voters remain presently registered despite having become ineligible to vote in Arizona on November 9, 2022.

113.    Because two federal elections have elapsed since the confirmation notices were sent to a minimum of 1,222,367 voters who have been inactive on Arizona's voter rolls, these registrants are no longer able to affirm their residence via 52 U.S.C. § 20507(d)(1)(A) or (d)(2)(A)-(B) and therefore may not legally use the procedure established in § 20507(e) to vote after having failed to return their cards. But this does not prevent them from voting anyway, as they remain registered to vote in Arizona, albeit unlawfully.

114.    By failing to remove all inactive voters who received but did not respond to their confirmation notices and thereafter failed to vote in the 2020 General Election or 2022 Midterm Election, or who otherwise failed to contact the registrar and reactivate their registration statuses, a total of at least 1,222,367 inactive voters were required to be removed 721 days ago, on November 9, 2022.

115.    Defendant has violated the NVRA by improperly maintaining at least 1,222,367 ineligible voters on the Arizona voter rolls as of the date this action is filed. Defendant has also violated the NVRA's requirement that compels Defendant to conduct a general program that makes a reasonable effort to identify and remove ineligible voters from the Arizona's registration list by failing to remove such ineligible voters and by failing to engage in oversight actions sufficient to ensure that local election jurisdictions identify and remove such ineligible voters.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Honorable Court issues the following relief:

(A) A temporary restraining order enjoining Defendant from continuing to violate the NVRA's public inspection provision and requiring Defendant to produce the records responsive to Plaintiffs' October 4, 2024, public records request, as required pursuant to 52 U.S.C. § 20507(i), prior to the 2024 General Election;

(B) An order declaring that Defendant has violated 52 U.S.C. § 20507(i) by failing to produce the above-mentioned records;

(C) Further preliminary and permanent injunctive relief requiring Defendant to

22

comply with 52 U.S.C. § 20507(i) and produce responsive records when properly requested by the public;

(D) An order declaring that Defendant has violated the NVRA's public inspection provision by failing to maintain records responsive to Plaintiffs' October 4, 2024, public records request for a period of at least two years as required pursuant to 52 U.S.C. § 20507(i);

(E) Further preliminary and permanent injunctive relief requiring Defendant to maintain the records contemplated by the NVRA in compliance with 52 U.S.C. § 20507(i);

(F) A temporary restraining order enjoining Defendant from continuing to violate the NVRA's list maintenance provisions pursuant to 52 U.S.C. § 20507(b)-(d);

(G) An order declaring that Defendant has violated the list maintenance provisions of 52 U.S.C. § 20507(b)-(d);

(H) Further preliminary and permanent injunctive relief requiring Defendant to subsequently and affirmatively administer an adequate general program of list maintenance in compliance with 52 U.S.C. § 20507(b)-(d) and enjoining Defendant, his agents, representatives, delegates, and successors, and all persons acting in concert with any of them from failing or refusing to comply with the list maintenance requirements;

(I) A temporary restraining order requiring Defendants to immediately (1) remove or direct each county's officer in charge of elections to remove from the voter rolls prior to the 2024 General Election all Excepted Registrants who failed to respond to a confirmation notice and who thereafter failed to vote in either the 2020 or 2022 elections or, alternatively, restraining these same Excepted Registrants, if they have not already voted, from voting except by provisional ballot and (2) require all registrants who have failed to respond to a confirmation notice or to vote in either the 2020 or 2022 elections be stricken from the rolls

subsequent to the 2024 General Election. *See* 52 U.S.C. § 20507(d)(1)(B); *Husted*, 584 U.S. at 767; A.R.S. § 16-166 (E); and

(J)   Any further relief that is deemed just and proper, including attorney fees and costs incurred in bringing this action.

### **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: October 30, 2024

Respectfully submitted,

by:   /s/Veronica Lucero


DAVILLIER LAW GROUP, LLC

Alexander Kolodin (AZ 030826)
akolodin@davillierlawgroup.com
Veronica Lucero (AZ 030292)
akolodin@davillierlawgroup.com


CITIZEN AG

Nicole C. Pearson* (CA #265350)
Rachel L. Dreher * (FL #32092)
nicole@citizenag.org
rachel@citizenag.org
**pro hac vice* forthcoming

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| 1789 FOUNDATION INC., d/b/a CITIZEN AG, and LINDSEY GRAHAM, | Case No.  _____ |
| *Plaintiffs*, | |
| v. | |
| ADRIAN FONTES, in his official capacity as Secretary of State, | |
| *Defendant*. | |

## <u>VERIFICATION</u>

I, Lindsay Graham, am over the age of 18, a resident of Maricopa County, Arizona and a registered Arizona voter. The allegations that pertain to me in this action are based upon my personal knowledge unless otherwise indicated, and if called upon to testify as to their truthfulness, I could and would do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my information, knowledge, and belief.

I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct to the best of my information, knowledge, and belief.

Dated: 10/30/2024 _____

Lindsey Graham (Oct 30, 2024 13:30 PDT)

Lindsey Graham