Alexander Kolodin (AZ #030826)
Veronica Lucero (AZ #030292)
DAVILLIER LAW GROUP, LLC
4105 North 20th Street Suite 110
Phoenix, Arizona 85016
Tel: (602) 730-2985
akolodin@davillierlawgroup.com
vlucero@davillierlawgroup.com
phxadmin@davillierlawgroup.com (file copies)

Nicole C. Pearson* (CA #265350)
Rachel L. Dreher * (FL #32092)
CITIZEN AG
111 NE 1st Street, 8th Floor
Miami, FL 33132
Tel: (442) 272-5526
nicole@citizenag.org
rachel@citizenag.org
*pro hac vice forthcoming

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| 1789 FOUNDATION INC., d/b/a CITIZEN AG, and LINDSEY GRAHAM, <br><br> *Plaintiffs*, <br><br> v. <br><br> ADRIAN FONTES, in his official capacity as Secretary of State, <br><br> *Defendant*. | Case No. _____ <br><br><br> **PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER OR, IN THE ALTERNATIVE, PRELIMINARY INJUNCTION** <br><br> *Oral Argument Requested* |

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiffs 1789 Foundation, Inc. d/b/a Citizen AG, together with Lindsey Graham (collectively, "Plaintiffs"), move this Court for entry of a Temporary Restraining Order or, alternatively, Preliminary Injunction: (i) Requiring the pre-election production of public records responsive to Plaintiffs' October 4, 2024 open records request as required pursuant to 52 U.S.C. § 20507, (ii) ordering the Secretary to immediately coordinate the state's removal of the categories of Excepted Registrants set forth in 52 U.S.C. § 2057 (c)(2)(B)(i)[1] from the rolls, and (iii) ordering the Secretary to coordinate the state's removal of the other registrants set forth in 52 U.S.C. § 2057(c) immediately upon the conclusion of the election. ("Motion"). In support thereof, Plaintiffs submit the following Memorandum of Points and Authorities and the declaration of Eric Scharfenberger, which is being filed concurrently herewith. A proposed order is also attached.

Plaintiffs respectfully request oral argument.

## MEMORANDUM OF POINTS AND AUTHORITIES

The National Voter Registration Act of 1993 ("NVRA" or "Act") was enacted for four stated purposes: (1) "increase the number of eligible citizens who register to vote"; (2) "enhance[]" their "participation … as voters in elections for Federal office"; (3) "protect the integrity of the electoral process"; and (4) "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). Ensuring election integrity and accurate, current voter rolls is governed by Section 8 of the Act, which is the subject of this lawsuit. 52 U.S.C. § 20507.

## I.   FACTUAL BACKGROUND
### A. The Secretary of State Has a Non-Discretionary, Affirmative Duty to Remove Ineligible Voters.

Section 8 of the NVRA requires Defendant to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists

---

[1] Criminal conviction resulting in the removal of civil rights, mental incapacity, death of the registrant, or where the registrant has asked to be removed.

of eligible voters by reason of" a registrant's death or change in residence. *Id*. § 20507(a)(4). It also requires a state-designated "chief State election official to be responsible for coordination of State responsibilities" required by the Act. *Id*. § 20509. Pursuant to A.R.S. § 16-142, the Secretary is "[t]he chief state election officer who is responsible for coordination of state responsibilities under the national voter registration act" and is this person contemplated by section 20507(a)(4).

The NVRA provides that registrants may be removed from the official list of eligible voters at any time at the request of the registrant, by reason of criminal conviction, mental incapacity, or death of the registrant. 52 U.S.C. § 20507(a)(3). This includes removal of these individuals during the 90 days prior to an election for Federal office (hereinafter "Excepted Registrants"). *See* 52 U.S.C. § 20507(c)(2)(B)(i). These Excepted Registrants are not deemed to be "inactive" and are not subject to any waiting period. They are deemed ineligible immediately and, as such, must be removed from voter rolls *post haste*.

The NVRA also provides for the removal of registrants by reason of the registrant's having moved out of a jurisdiction. This occurs when the registrant either (a) confirms his or her change of address in writing, 52 U.S.C. § 20507(d)(1)(A), or (b) is sent a "postage prepaid and pre-addressed return card" by forwardable mail asking them to confirm their address (the "Confirmation Notice"), then fails to respond to it, **and** subsequently does not "vote or appear to vote" for two general federal elections which is a period of roughly four years. 52 U.S.C. § 20507(d)(1)(B) & (d)(2). Registrants who fall under scenario (b) are designated as "inactive" for the duration of the pre-removal statutory waiting period of two general federal elections but **remain registered on voter rolls** and are **not** prohibited from voting during that period. *See* 52 U.S.C. § 20507(e); C.F.R. 9428.2(d).

In the event an inactive registrant votes during the statutory waiting period, the registrant's voter registration status is switched from "inactive" back to "active" and the

registrant is no longer subject to the NVRA's removal process. *Ibid.* Conversely, if an inactive registrant does not respond to the Confirmation Notice or appear to vote prior to the expiration of the statutory waiting period of two general federal elections, the NVRA requires Arizona to remove the inactive, ineligible registrant from the State's voter rolls. **Arizona has no discretion concerning its NVRA-imposed removal obligation**. "[F]ederal law makes this removal **mandatory**." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 767 (2018) (citations omitted, emphasis added).

### B. The Secretary of State Has a Non-Discretionary, Affirmative Duty to Maintain Voter Records, and to Produce Them When Requested.

In furtherance of the NVRA's goal of ensuring accurate voter rolls, States are required to retain and make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i). The NVRA does not recite every single record that this might include; however, it does set forth one specific example: "lists of the names and addresses of all persons to whom [Confirmation Notices] are sent, and information concerning whether or not each such person has responded to the notice …" *Id.* at § 20507(i)(2). Another example of records the NVRA requires States to maintain includes "voter history records," including those that reflect whether any inactive registrant who has not yet been removed votes or otherwise reactivates his or her registration by contacting the registrar at any time during the statutory waiting period. *Id.* § 20507(d)(2)(A); *see, e.g., Voter Reference Foundation, LLC v. Torrez*, 2024 WL 1347204 at *139 (D.N.M. Mar. 29, 2024) (holding Secretary of State's Office violated the NVRA by failing to produce "[c]urrent voter registration data, **including voter history**, for all active, inactive, suspended, and cancelled status voters.") (emphasis added).

### C. Plaintiffs Discover Defendant's Violations of Law and File Suit.

An aggrieved party may bring a civil suit for violation of the NVRA after 90 days' written notice to a state's chief election official, unless the violation occurs (a) within 120 days of a federal election, in which case only 20 days' notice is required, 52 U.S.C. § 20510(b)(1) & (2), or (b) within 30 days of a federal election, in which case no notice is required at all. *Id*. § 20510(b)(3). Here, as discussed in greater detail, below, as well as in Plaintiffs' complaint filed concurrently herewith, Plaintiffs were aggrieved by Defendant's NVRA violation on October 7, 2024, less than 30 days away from the November 5 election. Accordingly, Plaintiffs were not required to give Defendant notice of his violations of law, or of this impending lawsuit. *Ibid.* Specifically, Defendant (1) violated section 52 U.S.C. § 20507 of the NVRA on October 7, 2024 when he closed Citizen AG's open records request, seeking records covered and required to be made available for inspection under 52 U.S.C. § 20507(i); (2) failed to maintain such records for a minimum period of two years under 52 U.S.C. § 20507(i); and (3) failed to remove the names of ineligible voters who have neither responded to Arizona's Confirmation Notices, nor appeared to vote in the last two federal elections, as required under 52 U.S.C. § 20507(d). As a direct and proximate result of Defendant's failure to comply with his non-discretionary affirmative duties to maintain and produce voting records and to remove ineligible voters from the voter rolls, Plaintiffs have been harmed by, *inter alia,* being deprived of the opportunity to inspect and review records concerning voter list maintenance to ensure transparency and accountability in the administration of Arizona's elections, and having their votes diluted by the votes of ineligible registrants.

The support for these allegations derives primarily from Defendant's own admissions in response to the Election Administration and Voting Survey ("EAVS"), a report to Congress he is required to provide by law. *See* Decl. of Eric Scharfenberger at ¶¶ 10-13 (referencing Decl. Ex.'s 1-3); *see also* 52 U.S.C. § 20508(a)(3); 11 C.F.R. § 9428.7. Plaintiffs additionally rely on Secretary Fontes' October 7, 2024 statements, which he directly, or indirectly through his agents, employees, officers, or other officials,

made in response to Plaintiffs' October 4, 2024 open records request. Decl. at ¶¶ 14-17 (referencing Decl. Exs. 4-5).

Due to the impending and rapidly approaching federal election on November 5, 2024, and the need to protect the fundamental right to vote in Arizona, Plaintiffs seek this emergency relief.

## II.   <u>LEGAL STANDARD</u>

The standards governing temporary restraining orders and preliminary injunctions are "substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation omitted). A plaintiff seeking preliminary injunction relief must ordinarily show that (1) he or she is likely to succeed on the merits and (2) likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his or her favor; and (4) that an injunction is in the public's interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). However, where plaintiffs establish a likelihood of irreparable injury, and the balance of harms tips sharply toward the plaintiff, courts are directed to grant a preliminary injunction, even if serious questions on the merits exist. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132, 1139 (9th Cir. 2011).

## III.   <u>ARGUMENT</u>

### A.   **Plaintiffs Are Entitled to Injunctive Relief.**

Counts I and II of Plaintiffs' Verified Complaint arise out of the NVRA's public inspection provision, which states in pertinent part:

> Each State shall maintain for **at least 2 years** and shall make available for public inspection and, where available, photocopying at a reasonable cost, **all** records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

6

*See* 52 U.S.C. § 20507(i)(1) (emphasis added). More specifically, **Count I** is brought based upon Defendant's failure to "make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters . . .", and **Count II** is lodged because Defendant has admitted to violating the NVRA by failing to "maintain **for at least 2 years** . . . all records concerning the implementation of programs and activities . . .". *Id.* (emphasis added). **Count III**, is brought pursuant to Section 8 of the NVRA which, among other things, requires that registrants be removed from the voter rolls where they fail to respond to a Confirmation Notice and to appear to vote in two federal elections. Complt. ¶¶ 93-94;  52 U.S.C. §§ 20501(b)(3), (4);

There is no question as to whether Defendant violated Counts I and II, as Defendant has provided no records in response to Plaintiffs' October 4, 2024 open records request seeking documents reflecting the number of Arizona registrants who did not respond to confirmation notices and voted in either the 2020 General Election or 2022 Midterm Election, admitting that such records "do not exist." Scharfenberger Decl. at ¶ 16-17 (referencing Decl. Ex.'s 4-5). Accordingly, Plaintiffs will succeed on the merits of Counts I and II. Similarly, with respect to Count III, Plaintiffs will succeed on the merits because Defendant has produced no documents to disprove their calculations (based upon EVAC reports available to the public) that over 1.2 million ineligible voters remain on Arizona's voter rolls.

If Plaintiffs are not granted the relief sought herein to prevent Defendant from continuing to violate his non-discretionary, affirmative duties under federal law, and to order him to perform them, Plaintiffs will suffer irreparable harm by not having their valid votes afforded their full weight in the 2024 general election. There is no amount of money that can compensate for this loss. Moreover, rulings supporting Plaintiffs' right to fully enjoy their fundamental right to vote is a significant public interest that has been

– and should continue to be – vigorously protected by law. Accordingly, Plaintiffs'
Motion should be granted.

        i.  <u>Plaintiffs are likely to succeed on the merits of their Public Inspection</u>
           <u>Claims (Counts I and II).</u>

As explained, above, and supported by the evidence in the declarations submitted
in support hereof, it is not subject to reasonable dispute that Plaintiffs will succeed on
the merits of Counts I and II alleging Defendant has violated the NVRA's public
inspection provision. Specifically, Plaintiffs submitted an open records request on
October 4, 2024 that requested the following records:

1. Records and/or data that reflect the total number of confirmation notices
   sent to Arizona voters from November 7, 2018 through November 3, 2020;

2. Records and/or data that reflect the total number of responses to the
   aforesaid notices you or the State of Arizona received confirming the
   recipient is an eligible voter;

3. Records and/or data that reflect the total number of voters who were sent
   confirmation notices between November 7, 2018 and November 3, 2020
   who did not respond to the notice;

4. Records and/or data that reflect the total number of voters who were sent
   confirmation notices between November 7, 2018 and November 3, 2020
   who did not respond to the notice but voted on November 3, 2020;

5. Records and/or data that reflect the total number of voters who were sent
   confirmation notices between November 7, 2018 and November 3, 2020
   who did not respond to the notice and did not vote on November 3, 2020,
   but did vote on November 8, 2022.

6. Records and/or data that reflect the total number of voters who were sent
   confirmation notices between November 7, 2018 and November 3, 2020
   who did not respond to the notice, did not vote on November 3, 2020, and
   did not vote on November 8, 2022.

7. Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018 and November 3, 2020 who did not respond to the notice, did not vote on November 3, 2020, did not vote on November 8, 2022, and have been removed from Arizona's voter rolls at any time from November 9, 2022 through present.

8. Records and/or data that reflect the total number of voters who were sent confirmation notices between November 7, 2018 and November 3, 2020 who did not respond to the notice, did not vote on November 3, 2020, did not vote on November 8, 2022, and have been not been removed from Arizona's voter rolls as of present.

Scharfenberger Decl. at ¶ 14 (referencing Decl. Ex.'s 4). On October 7, 2024, Defendant responded by informing Plaintiffs that no responsive records were provided or made available and that their records request had been closed . *Id.* at ¶¶ 16-17 (referencing Decl. Ex.'s 4-5). Defendant concluded his October 7 response by stating, "The Secretary of State's Office does not have any records responsive to your request." *Id.*

Based on the above admissions, alone, there is no question that Plaintiffs are substantially likely to prevail on the merits of Counts I and II. Defendant did not produce or make available for inspection any responsive voting records in response to Plaintiff's request, and admits that records relating to the 2022 elections, which occurred less than 2 years ago, do not exist or have not been maintained as required by 52 U.S.C. § 20507(i)(1). Accordingly, Plaintiffs have met the first prong of the court's balancing test.

      ii.    <u>Plaintiffs are likely to succeed on the merits of their Section 8 Removal Claim (Count III).</u>

The NVRA expressly requires states to maintain accurate voter registration lists and make related records available for public inspection, including those related to voter list maintenance activities. Plaintiffs allege that Arizona has failed to comply with both obligations by retaining ineligible voters on its rolls and denying access to requested records (see above). Specifically, Defendant must automatically and immediately remove registrants who he discovers have died, been adjudicated incompetent, convicted

in a criminal proceeding resulting in a forfeiture of civil rights, or who have requested removal. Defendant must also remove voters who have not responded to Confirmation Notices or appeared to vote in two election cycles. Despite this, it appears through Plaintiffs' review of public EAVS reports based upon Arizona's self-reported data to the EAC (not Defendant's response to Plaintiff's records request) that Arizona has not removed over 1.2 million inactive and ineligible voters who failed to respond to confirmation notices and did not vote in two subsequent federal elections, as required by law. Because these facts are derived from statements made by Arizona to the EAC in its preparation of federal elections reports and data, Defendant cannot claim that he acted in compliance with *Husted* or the black-letter law of the NVRA. *Husted, supra,* 584 U.S. at 767 ("federal law makes this removal mandatory.").

United States Supreme Court precedent supports Plaintiffs' claims that Defendant was obligated to remove the inactive—and statutorily ineligible – voters in question. At its core, the only manner in which the Secretary can prevail or otherwise defend the allegations lodged against him is if he can show where more than 1.2 million voters on its rolls reside inside Arizona. If he cannot do that, Defendant has violated the NVRA. Presumably, had the Secretary been able to produce documents demonstrating his compliance with the NVRA, he would have done so. Since he has not, the only means of preventing Defendant from further violating the NVRA is through granting the emergency relief requested herein.

        iii.   <u>Plaintiffs will suffer irreparable harm if Defendant is not restrained from further violating their constitutionally-protected, fundamental and federal rights to vote</u>.

"In actions to enjoin continued violations of federal statutes, once a movant establishes the likelihood of prevailing on the merits, irreparable harm to the public is presumed." *Current-Jacks Fork Canoe Rental Ass'n v. Clark*, 603 F. Supp. 421, 427 (E.D. Mo. 1985). Whereas, here, Plaintiffs are likely to win on the merits of their claims, this second prong is met and Plaintiffs' Motion should be granted. In the event the court

disagrees, Plaintiffs still satisfy this prong when seeking to protect the fundamental right to vote of every Arizona citizen.

While Arizona's use of Confirmation Notices is intended to serve as a shield that protects its voters, Defendant's failure to follow through with full compliance in accordance with the NVRA's mandates has turned these Notices into a sword slashing away Plaintiffs' fundamental right to vote, a right the United States Supreme Court holds in the highest regard. Justice Hugo Black's majority opinion in *Wesberry v. Sanders* underscores this:

> No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. **Other rights, even the most basic, are illusory if the right to vote is undermined**.

*Wesberry v. Sanders,* 376 U.S. 1, 2 (1964) (emphasis added); *Reynolds v. Sims,* 377 U.S. 533, 560 (1964). In this context, the Supreme Court has explicitly held that anything that weakens or subverts the right to vote – no matter how gradually – renders even the most basic remaining rights illusory. *Wesberry, supra*, 376 U.S. at 2. Diminishing the strength or value of even just one American vote through dilution is unequivocally prohibited due to the grave consequences that flow therefrom.

Here, the EAVS data shows that 2,480,620 confirmation notices that were sent prior to the 2020 General Election and 1,654,865 registrants did not respond to these notices. *See* Decl. of Eric Scharfenberger at ¶¶ 19-20 (referencing Decl. Ex.'s 1-3).  Of these 1.65 million registrants, only 175,284 voters were removed from Arizona's rolls based on failure to respond to a confirmation notice after two federal elections. *Id.* at ¶ 21.[2] This figure is starkly lower than the 1,654,865 registrants who failed to respond to

---

[2] The relevant numbers are found in the 2020 EAVS page 159 and 2022 EAVS page 188.

confirmation notices before the 2020 election, suggesting that the majority of these individuals were not subsequently removed from the voter rolls as required. This gap raises concerns about compliance with Section 8 of the NVRA, which mandates the removal of voters who fail to respond to confirmation notices and do not engage in further voting activity within two federal elections.

Plaintiffs do not seek the removal of eligible voters. Therefore, definitionally, they are not seeking to deprive anyone of their right to vote. To the contrary, Ms. Graham and millions of other eligible Arizona just like her will have their fundamental right to vote undermined, absent the injunctive relief requested herein. The harm is irreparable once the election is over.

        iv.   <u>The balance of equities weighs sharply in favor of plaintiffs in the millions of eligible voters whose rights to vote they seek to protect.</u>

The balance of equities tips sharply in favor of Plaintiffs and the millions of similarly situated Arizona voters whose fundamental right Plaintiffs are trying to protect. As made clear throughout the Verified Complaint and this Memorandum, Plaintiffs do not seek to remove any eligible voter's ability to vote in the November 5 election. Rather, this Motion is filed to protect Arizonans properly included on the rolls. Active or inactive, eligible or even those Plaintiffs submit are ineligible based on change-of-residence grounds, Plaintiffs merely ask that this Court enjoin Defendant from further violating the provisions of the NVRA's public inspection provision; compel Defendant to produce or make available for inspection the records Citizen AG requested on October 4, 2024; further enjoin Defendant from destroying or otherwise failing to maintain any election or voter-related records for a period of at least two years; and compel Defendant to satisfy his affirmative statutory obligation to remove ineligible voters. This is not a burden but rather simple statutory compliance with well-established federal law.

In short, it is likely that millions of Arizonans' fundamental right to vote will be undermined absent the injunctive relief requested and Plaintiffs merely ask this Court to enforce the law Defendant has chosen to ignore.

    v.   <u>Injunctive relief to protect the fundamental right to vote is in the public's interest.</u>

Protecting the integrity of elections is a matter of public concern, as it ensures that all eligible voters' rights are preserved and that the electoral system functions fairly. Public interest favors transparent and accurate voter rolls, which this injunction seeks to enforce through compliance with the NVRA's requirements.

By ensuring that voter registration records are publicly available and accurately maintained, the injunction promotes transparency, accountability, and public confidence in the election process. This confidence is essential for encouraging voter participation and ensuring fair representation in the democratic process. Allowing ineligible voters to remain on the rolls could undermine the principle of "one person, one vote," a fundamental tenet of democratic governance that injunctive relief aims to protect. The relief requested not only addresses the plaintiffs' concerns but also advances broader public policy interests, ensuring fair and lawful elections.

Counts I and II of the Complaint do not seek to immediately remove any voter from the rolls but rather aim to secure to Plaintiffs the production of election-related documents to which they are statutorily entitled *prior* to the election. As to Count III, Congress has provided the applicable public policy considerations, statutorily decreeing that, though public policy is generally opposed to systemic voter roll cleanup within 90 days of an election, 52 U.S.C. § 2057(c)(2)(A), it is critical enough to the public interest that the categories of registrants set forth in (c)(2)(B)(i) (i.e. registrants asking to be removed, criminals, and the mentally incapacitated) be removed from the rolls as to vitiate this 90 day exclusion.[3] And, though the Secretary has refused to produce any

[3] Count III also seeks the removal of other categories of registrants, but not their pre-election removal.

records showing that he has ensured Arizona's compliance with these duties, supposing he has, then no inconvenience will attend an order requiring him to do what he has already done.

This precaution protects the principle of "one person, one vote" and ensures that the fundamental right to vote is not undermined by the presence of ineligible voters who remain on the rolls due to non-compliance with statutory requirements. Preserving this integrity aligns with established Supreme Court precedent, which has emphasized the need to maintain public confidence in the electoral process to encourage citizen participation in democracy.

Furthermore, accurate voter rolls reduce administrative burdens on election officials, ensuring smoother election administration, particularly in high-turnout elections. When voter rolls are current and correct, election resources are better allocated, minimizing potential delays, confusion, or errors at polling places. Thus, the requested injunction serves the broader interests of fair, lawful, and efficient elections.

Granting the injunctive relief requested and entering a temporary restraining order not only serves to protect the rights of Plaintiffs, but Arizona voters at-large, and also furthers public policy by ensuring efficient, lawful elections, reinforcing the democratic process, and upholding the public's trust in the electoral system. As such, the public interest strongly favors granting the relief requested.

vi.   <u>Once a vote by an ineligible voter has been cast, remediation is a virtual impossibility</u>.

The relief sought directly redresses the irreparable harm the Plaintiffs will suffer in the absence of a temporary restraining order. Without intervention, the general election is at the risk of continuing to proceed under conditions that allow ineligible voters to remain on the rolls, thereby diluting the votes of eligible voters and compromising the election's integrity. This harm cannot be remedied by initiating an action post-election, making immediate relief essential. *See e.g.*, *Tilson v. Mofford*, 153 Ariz. 468, 470 (1987)

("the procedures leading up to an election … must be challenged before the election is held."). Additionally, Plaintiffs have demonstrated just cause and substantial evidence of the NVRA violations by way of Defendant's own statements, underscoring the necessity of immediate judicial action. The relief sought, which focuses on transparency and the maintenance of accurate voter records, is narrowly tailored to address these imminent harms without causing undue disruption to the electoral process. Thus, granting the temporary restraining order is both necessary and appropriate to protect the plaintiffs' rights and the integrity of the upcoming election.

### B. <u>The Pre-Lawsuit Notice Requirement Is Waived.</u>

Based on the urgency and exigent nature of this type of action, Congress explicitly waived any pre-suit notice requirements that impose conditions precedent to lawfully maintaining the underlying action for violations of the NVRA occurring less than 30 days before a federal election. 52 § 20510(b)(3). On October 7, 2024, Defendant informed Plaintiffs that the State would not be providing any records requested by Plaintiffs in their October 4, 2024 open records request for records relating to the federal election less than two years ago in violation of section 20507(i) of the NVRA, which makes it unequivocally clear that "**<u>all</u>** records" must be made available for public inspection and records must be kept for **at least** two years. *See* Scharfenberger Decl. ¶ 15-17 (citing to Exh. 5). Because October 7, 2024 is within thirty (30) days of this year's federal election on November 5, Plaintiffs were not required to give Defendant notice of this lawsuit.

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Honorable Court issue a temporary restraining order or preliminary injunction: (i) requiring the immediate production of the requested records, (ii) ordering the Secretary to immediately coordinate the state's removal of the categories of Excepted Registrants set forth in 52 U.S.C. § 2057 (c)(2)(B)(i) from the rolls, and (iii) ordering the Secretary to coordinate the state's

removal of the other registrants set forth in 52 U.S.C. § 2057(c) immediately upon the conclusion of the election. A copy of the proposed order is attached hereto.

Dated: October 30, 2024

Respectfully submitted,

By: /s/Alexander Kolodin

DAVILLIER LAW GROUP, LLC

Alexander Kolodin (AZ # 030826)
akolodin@davillierlawgroup.com
Veronica Lucero (AZ # 030292)
vlucero@davillierlawgroup.com

CITIZEN AG

Nicole C. Pearson* (CA #265350)
Rachel L. Dreher * (FL #32092)
nicole@citizenag.org
rachel@citizenag.org
*pro hac vice forthcoming

*Attorneys for Plaintiffs*