IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| 1789 Foundation Incorporated et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Adrian Fontes, <br><br> Defendant. | No. CV-24-02987-PHX-SPL <br><br> **ORDER** |

Before the Court is Plaintiffs' Motion for Temporary Restraining Order or, in the Alternative, Preliminary Injunction (Doc. 2) and Defendant's Response in Opposition (Doc. 14). Having considered the relevant papers and the arguments of both parties at the November 1, 2024 hearing, the Court now rules as follows.

I. **BACKGROUND**

This case arises out of alleged violations of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501 *et seq.*, by Defendant Adrian Fontes ("Defendant" or the "Secretary") in his official capacity as the Arizona Secretary of State. (Doc. 1 at 2, 5). The Plaintiffs bringing suit are 1789 Foundation Incorporated, d/b/a Citizen AG ("Citizen AG"), a Florida nonprofit "dedicated to educating Americans about their rights . . . and preserving American civil liberties," and Ms. Lindsey Graham, an Arizona resident, member of Citizen AG, and active registered voter in Maricopa County. (*Id.* at 5).

On October 4, 2024, Plaintiffs allege that they submitted an Open Records Request (Doc. 2-1 at 804–07) to the Arizona Secretary of State, in which they requested various

records related to the provisions of the NVRA regarding inactive voters. (Doc. 2-1 at 3, 805–07). On October 7, 2024, the Office of the Secretary of the State responded that the "Office does not have any records responsive to your request. However, the individual counties may have the information you seek to obtain." (Doc. 2-1 at 810).

Based on Plaintiffs' analysis of data provided by the Secretary of State in response to the Election Administration and Voting Survey ("EAVS"), Plaintiffs are concerned that there may be upwards of one million ineligible voters who have not been removed from Arizona's voter rolls in violation of the NVRA. (Doc. 2 at 11–12). They allege that the denial of their records request deprived Citizen AG "of the opportunity to inspect and review records concerning voter list maintenance," which frustrates their "purpose of preserving constitutional rights and civil liberties, including those of its members such as Ms. Graham, who herself is directly injured as a registered and eligible Arizona voter." (Doc. 1 at 18).

More than three weeks after their records request was denied, on October 30, 2024, Plaintiffs filed a Verified Complaint (Doc. 1), Summons (Doc. 3), and Motion for Temporary Restraining Order (Doc. 2) in this Court, alleging that Defendant has violated the NVRA by (1) failing to make certain voter records available for public inspection, (2) failing to maintain such records for the statutory minimum period of 2 years, and (3) failing to remove ineligible voters from the Arizona voter rolls (Doc. 2 at 5, 7). On October 31, 2024, counsel for Plaintiffs certified that service had been executed on Defendant. (Doc. 10).

On November 1, 2024 at 12:16 a.m., Defendant filed an Opposition in Response to Plaintiffs' Motion for TRO, in which Defendant argues that this Court should deny Plaintiffs' motion for four main reasons: (1) "the *Purcell* principle cautions federal courts from ordering changes to election procedures immediately before an election"; (2) "laches bars Plaintiff's demands because they unreasonably delayed this action"; (3) "Plaintiffs do not have standing to demand the removal of registered voters from the rolls"; and (4) "the balance of hardships and the public interest weigh strongly against the relief sought." (Doc.

14 at 2).

This Court conducted a hearing on November 1, 2024 at 9:00 a.m. to hear arguments on the pending Motion for a Temporary Restraining Order, and counsel for both parties appeared. (Doc. 8; ME 16).

## II.   LEGAL STANDARD

A party seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.[1] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014); *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105–06 (9th Cir. 2012); *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "The basic function of a preliminary injunction is to preserve the *status quo* pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir. 1988).

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotation omitted) (citation omitted). Where the movant seeks a mandatory, rather than prohibitory, injunction, injunctive relief is "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399,

---

[1] The Ninth Circuit observes a "sliding scale" approach, in that these elements "are balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, by example, an injunction can issue where there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff… so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

1403 (9th Cir. 1993).[2]

## III.  DISCUSSION

### A.  The National Voter Registration Act

The National Voter Registration Act of 1993 ("NVRA") was enacted with two main objectives: "[1] increasing voter registration and [2] removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); 52 U.S.C. § 20501(b). As to the latter objective, the NVRA dictates that each state "*shall* . . . conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of [] the death of the registrant; or [] a change in the residence of the registrant, in accordance with subsections (b), (c), and (d) . . . ." 52 U.S.C. § 20507(a) (emphasis added).

Subsection (d) specifies the procedures that a state must follow before removing a registrant from voter rolls on change-of-residence grounds. *See* § 20507(d). A state may *only* remove the name of a registrant from the official list of eligible voters in elections for Federal office if the registrant has either (1) confirmed in writing that they have changed residence, or (2) failed to respond to a notice *and* failed to vote in two consecutive general elections after the date of the notice (i.e., about four years). § 20507(d)(1). The statute further dictates that "[a] voting registrar *shall* correct an official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with this subsection." § 20507(d)(3) (emphasis added). Citing subsection (d)(3), the Supreme Court has stated in dicta that "[n]ot only are States allowed to remove registrants who satisfy these requirements, but federal law makes this removal mandatory." *Husted*, 584 U.S. at 767 (2018). However, the NVRA generally prohibits voter-roll cleanup

---

[2] "A mandatory injunction orders a responsible party to take action," while "a prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quotations omitted). "The 'status quo' refers to the legally relevant relationship between the parties before the controversy arose." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060–61 (9th Cir. 2014).

4

within 90 days of an election, except for the removal of names by reason of (1) a registrant's own request, (2) a criminal conviction, (3) mental incapacity, or (4) death. 52 U.S.C. § 20507(c)(2)(A), (B). This "90 Day Provision" prohibits systematic removal programs "when the risk of disfranchising eligible voters is the greatest." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014).

The NVRA also contains a public disclosure provision, which requires states to "maintain for at least 2 years" and "make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered." § 20507(i).

Arizona state law has a parallel mandate addressed to county recorders that if a given registrant "does not vote in an election during the period after the date of the notice from the recorder through the date of the second general election for federal office following the date of that notice, the registrant's name *shall* be removed from the list of inactive voters." A.R.S. § 16-166(E) (emphasis added).

### B. Standing

The judicial power extends only to "Cases" and "Controversies" under the Constitution. Art. III, § 2. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). In order to satisfy the constitutional minimum standing requirements, a plaintiff must show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "At the preliminary injunction stage, a plaintiff must make a 'clear showing' for each of these three requirements." *Arizona All. for Retired Americans v. Mayes*, 117 F.4th 1165, 1171–72 (9th Cir. 2024) (citing *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010)).

The Ninth Circuit, based on the Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), derived a two-part test "that conferred standing on organizations if they merely alleged that a challenged policy (1) frustrated the organization's mission or goal, and (2) required the organization to spend money or divert resources in response." *Mayes*, 117 F.4th at 1174. However, the Ninth Circuit in *Mayes* found that a more recent decision from the Supreme Court, *Food & Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), "clarified that organizational standing may not be premised on a broadly stated mission or goal. Nor may it hinge on the claim that the organization has diverted resources in response to government action that does not directly affect that organization's existing core activities." *Mayes*, 117 F.4th at 1177 (citation omitted). The Court concluded that "rather than applying our two-pronged inquiry of whether a challenged policy frustrates an organization's mission and requires it to spend money resources, we now must apply, following the strictures of *Hippocratic Medicine*, the traditional three-part Article III standing analysis: (1) injury-in-fact, (2) causation, and (3) redressability." *Id.* at 1178.

This Court therefore begins with a threshold inquiry into the standing of the Plaintiffs as to each of their three claims.

            *1.*     *Record Inspection Claims (Counts I & II)*

First, Plaintiffs allege that Defendant failed to make records available for inspection as required by 52 U.S.C. § 20501(i). (Doc. 1 at 16). This count is brought by Citizen AG alone against Defendant. (*Id.* at 16). This allegation is based entirely on the October 4, 2024 online records request submitted to the Secretary by Citizen AG's Director of Operations, Eric Scharfenberger, through the website MuckRock (a non-profit online FOIA request service). (Doc. 2-1 at 1, 805). Because the records request was closed on October 7 with nothing more than a perfunctory response stating that the Secretary's Office "does not have any records responsive to [his] request," (Doc. 2-1 at 810), Plaintiffs argue that Defendant violated his statutory duty to make records concerning voter list maintenance activities available for public inspection. (Doc. 1 at 17).

The second count is brought by both Plaintiffs against Defendant. (Doc. 1 at 18). They claim that the October 7 response from the Office of the Secretary stating that the Office "does not have any records responsive to your request" is "evidence that Defendant has violated the NVRA's requirement" that the state maintain records concerning voter list maintenance activities for at least two years, and that Plaintiffs have therefore been "deprived of the opportunity to inspect and review records concerning voter list maintenance." (Doc. 1 at 19).

At the TRO hearing, counsel for Defendant ostensibly admitted that Citizen AG likely has standing to bring its record denial claims, because Mr. Scharfenberger, on behalf of Citizen AG, was the one to submit the records request. (Hearing Tr. at 60:6–7 (noting that the records denial issues are "a closer question")). However, Defendant argues that Ms. Graham does not have standing as to Count II, because "Graham did not submit the public records request to the Secretary . . . [and] as such she is not a person aggrieved by the Secretary's actions." (Doc. 14 at 10). The Court agrees that there has been no showing by Plaintiffs that Ms. Graham has ever attempted to obtain records from the Secretary, let alone that such a request has been denied. As such, she has not met the bare minimum requirements under Article III to show that she has suffered a particularized injury-in-fact fairly traceable to the Defendant's conduct as it relates to the Secretary's maintenance of the voter registration lists.

Therefore, Citizen AG alone has standing as to Counts I and II.

*2. Voter Roll Clean-Up Claim (Count III)*

Defendant argues that under the recent rulings in *Hippocractic Medicine* and *Mayes*, Citizen AG's "allegations of injury are woefully insufficient to establish an independent basis for standing." (Doc. 14 at 13). Indeed, it appears that Citizen AG's basis for standing as to this count is based entirely on allegations that (1) its purpose was frustrated and (2) it had to divert resources in response to that frustration. Specifically, Citizen AG alleges that "[p]rotecting the voting rights of Citizen AG members who are lawfully registered to vote in Arizona is germane to Citizen AG's mission," (Doc. 1 at 15), and that "Citizen AG has

7

expended substantial resources . . . to investigate, address, research, and counteract Defendant's failure to comply with their NVRA voter list maintenance obligations" (*Id.* at 16).

"Making civic participation easy, training Arizonans to become more civically involved, and increasing civic engagement by ensuring free and fair elections are all 'broadly stated mission[s] or goal[s]' on which organizational standing may no longer be premised." S*trong Communities Found. of Arizona Inc. v. Richer*, 2024 WL 4475248, at *9 (D. Ariz. Oct. 11, 2024) (quoting *Mayes*, 117 F.4th at 1177). And allowing standing "based on this type of organizational resource-prioritization would violate *Hippocratic Medicine*'s command that 'an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action.'" *Id.* at *10 (quoting *Hippocratic Medicine*, 602 U.S. at 394).

When asked to supply this Court with any *other* basis for its standing as to this count, Plaintiffs cited to *Vota v. Fontes*, 2024 U.S. Dist. LEXIS 36596, at *105 (D. Ariz. Feb. 29, 2024), a case which predates (and is overruled by) the Supreme Court's decision in *Hippocractic Medicine* and the Ninth Circuit's decision in *Mayes*. (Hearing Tr. at 13:9–17). Even if Plaintiffs attempted to argue that they have representational standing on behalf of their members, such an argument would fail, given that Ms. Graham's standing argument on the basis of "vote dilution" fails, as discussed below. *See Richer*, 2024 WL 4475248, at *8 ("An association will have representational standing only when its members 'otherwise have standing to sue in their own right.'" (quoting *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

As to Ms. Graham's standing, her voter dilution argument fails under existing law. To invoke Article III standing, a plaintiff must allege a concrete and particularized injury that is actual or imminent and not hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A "generalized grievance" is insufficient to invoke standing as "the impact on [plaintiff] is plainly undifferentiated and 'common to all members of the

public.'" *Lujan*, 504 U.S. at 575. In addition, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 341 (2016) (noting that the plaintiff could not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.").

Ninth Circuit precedent is clear that "the mere fact that some invalid ballots have been inadvertently counted, without more, does not suffice to show a distinct harm to any group of voters over any other." *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1089 n.13 (9th Cir. 2024). "The crux of a vote dilution claim is *inequality* of voting power—not diminishment of voting power *per se*. After all, dilution of voting power, in an absolute sense, occurs any time the total number of votes increases in an election. Vote dilution in the *legal* sense occurs only when disproportionate weight is given to some votes over others within the same electoral unit." *Id*. at 1087. Here, Plaintiff's alleged injury is one that could be raised by any Arizona voter, and, as a result, is the definition of a generalized grievance. As such, it is insufficient to convey Article III standing. *See, e.g.*, *id*. (finding "'vote dilution' fails as a matter of law . . . [because] any diminishment in voting power that resulted was distributed across all votes equally. That's because any ballot—whether valid or invalid—will always dilute the electoral power of all other votes in the electoral unit equally, regardless of the voting method a voter chooses to utilize."); *Richer*, 2024 WL 4475248, at *8 (finding that a colloquial vote dilution claim does not give rise to a particularized injury as it is suffered by every voter, and is therefore insufficient to establish standing); *Republican Nat'l Comm., et al. v. Aguilar*, No. 2:24-cv-00518-CDS-MDC, 2024 WL 4529358, at *4 (Oct. 18, 2024) (finding plaintiff's "fear of vote dilution can be raised by every and any voter" and does not present the particularized injury necessary to establish standing).

The Court further finds Ms. Graham's voter dilution argument to be speculative as any such harm requires uncertain, intervening events: (1) ineligible voters must still remain on the voter rolls; (2) those ineligible voters must be afforded an opportunity to vote; (3) those ineligible voters must, in fact, vote; and (4) nothing will be done to prevent it. *See*

*Aguilar*, 2024 WL 4529358, at *5. The Court finds this chain of possibilities too speculative to establish a concrete injury for purposes of Article III standing.

### C.     Merits

Turning now from the issue of standing to the merits of Plaintiffs' Motion for a Temporary Restraining Order, this Court must consider each of the *Winter* factors in relation to Plaintiffs' requested relief on each count.

#### 1.     Count I: Failure to Make Records Available for Inspection

As to the first *Winter* factor, Citizen AG has established a strong likelihood of success on the merits of this claim, because the plain text of the NVRA clearly establishes a right to public inspection of "*all* records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered." 52 U.S.C. § 20507(i) (emphasis added). Citizen AG has clearly shown that their October 4, 2024 records request was denied. (Doc. 2-1 at 810). Defendant's own records corroborate this denial. (Doc. 14-1). In response to the request, Plaintiffs were told that "the individual counties may have the information you seek to obtain," (Doc. 2-1 at 810), but this does not, and *cannot*, absolve the Secretary of his independent statutory duty to maintain records of eligible voters pursuant to federal law. This factor therefore weighs strongly in Citizen AG's favor.

As to the second *Winter* factor, the likelihood of irreparable harm, "[i]n actions to enjoin continued violations of federal statutes, once a movant establishes the likelihood of prevailing on the merits, irreparable harm to the public is presumed. This presumption is rebuttable, however, by evidence that the threatened injury is not irreparable." *Current-Jacks Fork Canoe Rental Ass'n v. Clark*, 603 F. Supp. 421, 427 (E.D. Mo. 1985); *see also, e.g.*, *Hunt v. U. S. Sec. & Exch. Comm'n*, 520 F. Supp. 580, 609 (N.D. Tex. 1981) ("The public interest is often declared in the form of a statute and it has been held that when the acts which are sought to be enjoined have been declared unlawful or are clearly against the

public interest, a Plaintiff need not show irreparable injury or a balance of hardships in his favor."). Here, Defendant has failed to rebut the presumption that irreparable harm to the public will occur if Citizen AG is unable to exercise its statutory right to review the public records at issue. This factor also weighs toward Citizen AG.

Similarly, the balance of equities weighs in favor of Plaintiffs, who have a clear statutory right to inspect certain records. Defendant argues that producing the requested records places a heavy burden on the Office of the Secretary of State, especially on the eve of a national election. (Doc. 14 at 13–14). The Court is aware that compiling the records may prove difficult, which the Court will account for in the time it allots Defendant to produce the requested records. However, that difficulty has no bearing on Citizen AG's right to receive the records, whether they had made such a request two years ago (on November 9, 2022, when Plaintiffs contend the State of Arizona should have cleaned up its voter rolls (Doc. 1 at 12)) or six days before the election. The law is the law, even on the eve of an election.

Finally, the public interest factor weighs strongly in Plaintiffs' favor—after all, the NVRA itself was clearly passed with the public interest in mind. *See Husted*, 584 U.S. at 783 (Breyer, J. dissenting) (discussing Congress' purpose in enacting the NVRA). For these reasons, the Court shall grant Plaintiffs' requested relief in the form of an order "that Defendant shall produce to Plaintiffs copies of all records responsive to Plaintiff's October 4, 2024, open records request." (Doc. 2-2 at 2). However, given the voluminous nature of such records, as illuminated by Plaintiffs' calculations (Doc. 1 at 3) and confirmed by Defendant at the hearing (Hearing Tr. at 49:23–50:4), Defendant shall be given 30 days to produce said records.

### 2. *Count II: Failure to Maintain Records for Minimum of 2 Years*

This Court has already found that only Citizen AG, and not Ms. Graham, possesses standing to bring this claim. However, even if both parties had established the requisite standing, at this preliminary stage, this claim is doomed to fail by its completely speculative nature. Plaintiffs claim that the October 7 response from the Office of the Secretary stating

that the Office "does not have any records responsive to your request" is "*evidence* that Defendant *has violated* the NVRA's requirement" that the state maintain records concerning voter list maintenance activities for at least two years. (Doc. 1 at 19) (emphasis added). However, Plaintiffs' would-be smoking gun is barely smoldering. It is unclear whether it is true that the Office doesn't have the relevant records—and we don't have *a single shred of evidence*, besides that cursory email, to suggest they don't. That single response is far from an "admission" that the records do not exist. (Doc. 2 at 9). In fact, Plaintiffs admitted at the hearing that they do not, and cannot, know whether Defendant has maintained the registration records, because their October 4 records request was denied. (Hearing Tr. at 76 (stating that "unfortunately we don't know that because we don't have the records")).

When "a plaintiff has failed to show the likelihood of success on the merits, we 'need not consider the remaining three [*Winter* elements].'" *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (quoting *Dish Network Corp. v. FCC*, 653 F.3d 771, 776–77 (9th Cir. 2011)). As such, the Court declines to issue any relief to Plaintiffs on the basis of this count.

          3.         *Count III: Failure to Maintain Accurate/Current Voter Registration Lists*

Based on Plaintiffs' review of publicly reported election data, they estimate "that Arizona has not removed over 1.2 million inactive and ineligible voters who failed to respond to confirmation notices and did not vote in two subsequent federal elections as required by law." (Doc. 2 at 10). These "facts are derived from statements made by Arizona to the EAC in its preparation of federal elections reports and data," but Plaintiffs do not have any independent data to support the claim that over 1.2 million inactive and ineligible voters remain on the Arizona voter rolls. (*Id.*).

Even if the 1.2 million statistic is true, this Court does not have the authority to issue an injunction ordering the Secretary to strike 1.2 million voters from the rolls on the eve of the election, given the NVRA's 90-day provision, 52 U.S.C. § 20507(c)(2)(A). However,

the 90-day provision does *not* preclude the removal of voters (referred to by Plaintiffs as "Excepted Registrants") made ineligible by reason of request, criminal conviction, mental incapacity, or death. § 20507(a)(3–4). Plaintiffs are therefore asking the Court to order Defendant to remove only these Excepted Registrants before November 5, and to order the State's removal of all other registrants "immediately upon the conclusion of the election." (Doc. 2-2 at 2).

Neither Citizen AG nor Ms. Graham have established they have standing to bring this claim, as their arguments based on organizational standing and vote dilution are insufficient to satisfy the strictures of Article III. However, even if the Plaintiffs *did* have standing to bring this claim, it would once again fail on the grounds that it is, at this preliminary stage, wholly speculative. In fact, Plaintiffs seem to acknowledge its spuriousness, noting that "it is possible that Defendant is in possession of documents that would obviate the need to allege this count." (Doc. 1 at 19 n.7). Once again, without a single shred of evidence—beyond hypothetical calculations based on two-year-old data (Doc. 1 at 12)—to prove that Defendant has failed to maintain accurate voter rolls, Plaintiffs have *no* likelihood of success on the merits of this claim, and the Court need not consider the remaining three *Winter* factors.

Because the Court is denying Plaintiffs' claim on this basis, it need not address Defendant's counterarguments based on the *Purcell* principle and the equitable doctrine of laches. (Doc. 14 at 7–9).

### IV.     CONCLUSION

Beyond various issues raised regarding Plaintiffs' Article III standing, their claims that the Arizona Secretary of State has failed to maintain accurate voter registration records in violation of the NVRA is simply without any real evidentiary support. Nonetheless, Citizen AG is correct that the NVRA at least entitles them to inspect the relevant records for themselves. *See* 52 U.S.C. § 20507(i).

///

///

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Temporary Restraining Order or, in the Alternative, Preliminary Injunction (Doc. 2) is **granted in part as modified**. Defendant shall produce to Plaintiffs copies of all records responsive to Plaintiff's October 4, 2024, open records request by **Monday, December 2, 2024.** The Motion is **denied** in all other respects.

Dated this 1st day of November, 2024.

Honorable Steven P. Logan
United States District Judge