**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| 1789 Foundation Incorporated et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Adrian Fontes, <br><br> Defendant. | No. CV-24-02987-PHX-SPL <br><br> **ORDER** |

Before the Court is a Motion to Intervene as Defendants (Doc. 19) brought by One Arizona and the Arizona Alliance for Retired Americans (the "Proposed Intervenors"), Plaintiffs' Response in Opposition (Doc. 37), and Proposed Intervenors' Reply (Doc. 41). For the following reasons, the Motion will be granted.[1]

**I.     BACKGROUND**

This case arises out of alleged violations of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501 *et seq.*, by Defendant Adrian Fontes ("Defendant" or the "Secretary") in his official capacity as the Arizona Secretary of State. (Doc. 1 at 2, 5). Plaintiffs are 1789 Foundation Incorporated, d/b/a Citizen AG ("Citizen AG"), a Florida nonprofit "dedicated to educating Americans about their rights . . . and preserving American civil liberties," and Ms. Lindsey Graham, an Arizona resident, member of

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Citizen AG, and active registered voter in Maricopa County. (*Id.* at 5). On October 30, 2024, Plaintiffs filed a Verified Complaint (Doc. 1) and Motion for Temporary Restraining Order ("TRO") (Doc. 2) in this Court, alleging that Defendant violated the NVRA by (1) failing to make certain voter records available for public inspection, (2) failing to maintain such records for the statutory minimum period of 2 years, and (3) failing to remove ineligible voters from the Arizona voter rolls (Doc. 2 at 5, 7). On November 1, 2024, the Court conducted a hearing on the Motion for TRO, and later that day, it granted the Motion in part and denied it in part. (ME 16; Doc. 17). The Court ordered Defendant to turn over certain records for Plaintiffs' inspection pursuant to the NVRA, but it denied Plaintiffs' request to cancel the registration of up to 1.2 million allegedly ineligible voters. (Doc. 17 at 13–14).

On November 11, 2024, Proposed Intervenors filed the instant Motion. (Doc. 19). Proposed Intervenors consist of two organizations, One Arizona and Arizona Alliance for Retired Americans. One Arizona "is a nonprofit, nonpartisan 501(c)(3) corporation with a mission of building a culture of civic engagement and democratic participation among historical underrepresented communities in Arizona." (Doc. 19 at 7). Arizona Alliance for Retired Americans is "a nonpartisan 501(c)(4) organization" with the mission "to ensure social and economic justice and protect the civil rights of retirees after a lifetime of work." (*Id.* at 8). Both organizations are involved in voter registration efforts, and both have participated in litigation to protect the ability of their members to register and vote. (*Id.* at 7–9).

**II.     ANALYSIS**

Federal Rule of Civil Procedure ("Rule") 24 recognizes two types of intervention, intervention of right and permissive intervention. Courts must permit intervention of right, but they may choose to permit or deny permissive intervention. *See Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 261, 265 (D. Ariz. 2020). "Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), *as amended* (May 13, 2003). Here, Proposed Intervenors argue

that they are entitled to intervene as of right under Rule 24(a), and in the alternative, the Court should grant permissive intervention under Rule 24(b). (Doc. 19 at 3).

**A. Intervention of Right**

Rule 24 states that intervention of right is available to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Courts in the Ninth Circuit analyze intervention of right by applying a four-part test:

> (1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011).

Plaintiffs do not dispute that Proposed Intervenors' Motion to Intervene was timely made. (Doc. 41 at 3). However, both sides contest whether the remaining three elements are met. The Court will analyze each remaining element in turn.

*1. Significant Protectable Interest*

"Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a 'practical, threshold inquiry,' and '[n]o specific legal or equitable interest need be established.'" *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir.1993)). "To demonstrate a significant protectable interest, an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).

Proposed Intervenors claim they have two significant protectable interests "that may

be impaired or impeded by the disposition of this case: (1) protecting the voting rights of their members and constituents, and (2) preserving their mission-critical organizational resources." (Doc. 41 at 3). As to the first interest, they claim that Plaintiffs' lawsuit threatens to wrongfully remove registrants from Arizona's voter rolls, which "threatens to wrongfully remove any number of One Arizona's over 600,000 constituents and the Alliance's nearly 51,000 members." (*Id.*). As to the second interest, Proposed Intervenors argue that if the Court were to grant Plaintiffs' requested relief, they "would have to divert resources to educating voters about the impeding purges and to ensuring voters remain registered and are able to re-register if removed, all at the expense of existing investments in ongoing civic engagement activities." (*Id.* at 5–6). Plaintiffs, however, argue that Proposed Intervenors' interests are generalized and undifferentiated from the interests of many other citizens of the state of Arizona. (Doc. 37 at 6).

The Ninth Circuit has "stress[ed]" that "intervention of right does not require an absolute certainty that a party's interests will be impaired or that existing parties will not adequately represent its interests," but rather that "disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation." *Citizens for Balanced Use*, 647 F.3d at 900 (quoting Fed. R. Civ. P. 24(a)(2)). Proposed Intervenors note that they "collectively represent tens of thousands of lawful Arizona voters who stand to be wrongfully swept up in the voter purges threatened by this lawsuit," including many retiree members who often relocate or travel and therefore "are at a particularly acute risk of failing to receive a notice that is mailed by election officials to inform them that their voter registration is subject to cancellation," as well as many college students who "frequently change addresses due to their age and financial circumstances." (Doc. 19 at 12). Thus, they argue that disposition of this action places them at a heightened risk of their members' registration being needlessly or wrongfully cancelled.

To support their argument, Proposed Intervenors cite to an out-of-Circuit case from the Northern District of Illinois in which the court found, in a similar voter-list-

maintenance case brought under the NVRA, that an intervening organization indeed possessed "an organizational interest in avoiding adverse reallocation of resources to protect the voting rights of their members, and an associational interest in protecting their members from unlawful removal from the voter rolls . . . ." *Jud. Watch, Inc. v. Illinois State Bd. of Elections*, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024). Although not binding, this Court agrees that, like in the Illinois case, Proposed Intervenors here have demonstrated significant protectable organizational and associational interests in protecting their own constituents' voting rights and in preserving their financial resources. *See also Issa v. Newsom*, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (finding a significant protectible interest where, if the plaintiffs were to succeed on their claims, the proposed intervenors "would have to devote their limited resources to educating their members on California's current voting-by-mail system and assisting those members with the preparation of applications to vote by mail"). Accordingly, the Court finds that the second factor has been met.

### 2. Practical Impairment

This factor is often resolved in conjunction with the "significant protectable interest" factor. *See, e.g.*, *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it."). The Court agrees with Proposed Intervenors that a ruling in favor of Plaintiffs could affect the voting rights of their members and force them "to divert resources to educating voters about the impending purges and ensuring that their members organizations are prepared to counteract such relief." (Doc. 19 at 14). Thus, the third factor is met.

### 3. Adequate Representation

Finally, the Court must determine whether existing parties adequately protect Proposed Intervenors' interest. This Court "follow[s] the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a

practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory committee's notes). To determine whether Proposed Intervenors' interests are already adequately represented by the Secretary, the Court may consider

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.

*Id.*

Plaintiffs argue that intervention is unnecessary because "the Secretary's objective of defending the rights of *all* voters covers [Proposed Intervenors'] interest." (Doc. 37 at 9). They cite to *Yazzie v. Hobbs*, 2020 WL 8181703 (D. Ariz. Sept. 16, 2020), which involved a constitutional challenge to Arizona's mail ballot receipt deadline. The proposed Republican intervenors in that case argued that the Secretary of State did not adequately represent their interest in defending the constitutionality of the law because the Secretary had recently expressed divergent political and legal positions. *Id.* at *3. However, the court found that the Secretary had in no way stated that it would not represent the proposed intervenors' interests in the dispute, and that the intervenors' interest in defending the constitutionality of the law was adequately represented without the intervenors' assistance. *Id.* at *4.

Proposed Intervenors argue that although the Secretary might be similarly opposed to Plaintiffs' claims, "Proposed Intervenors would be the *only parties* seeking to unequivocally protect the voters at risk of wrongful removal, at every stage of this lawsuit, without the need to balance other duties or considerations." (Doc. 41 at 10). Unlike in *Yazzie*, where the proposed intervenors sought to defend the constitutionality of the law at issue, here, it appears that Proposed Intervenors' primary concern is with defending their organizational and associational interests in protecting the voting rights of their

constituents, which they believe would be negatively impacted were this litigation to resolve in favor of Plaintiffs. Furthermore, Proposed Intervenors point out that "the divergence between the Secretary and Proposed Intervenors" is illustrated by "the fact that the Secretary recently filed an Answer . . . while Proposed Intervenors intend to file a motion to dismiss." (*Id.*). This suggests that the Secretary will *not* "make all the intervenor's arguments," which weighs in favor of granting intervention. *See Berg*, 268 F.3d at 822.

In sum, the Court finds that all four 24(a) factors the Ninth Circuit evaluates when granting intervention of right have been met. However, even if Proposed Intervenors had not made the requisite showing under Rule 24(a), this Court has discretion to grant permissive intervention under Rule 24(b).

### B.  Permissive Intervention

Courts may permit intervention by a non-party where there is "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Cosgrove v. Nat'l Fire & Marine Ins. Co.*, 770 F. App'x 793, 795 (9th Cir. 2019). In exercising that discretion, "a court must consider whether intervention will unduly delay or prejudice the original parties and should consider whether the applicant's interests are adequately represented by the existing parties and whether judicial economy favors intervention." *Miracle v. Hobbs*, 333 F.R.D. 151, 156 (D. Ariz. 2019) (citing *Venegas v. Skaggs*, 867 F.2d 527, 530–31 (9th Cir. 1989)).

No party disputes this Court's jurisdiction or the Proposed Intervenors' timeliness, nor do Plaintiffs contest that Proposed Intervenors have defenses that share "a common question of law and fact" with the main action. *See Beckman*, 966 F.2d at 473. However, Plaintiffs argue that intervention would unnecessarily delay this litigation and "muddy[] this case with needless additional filings." (Doc. 37 at 10); *see* Fed. R. Civ. P. 24(a)(3) ("In

exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."). Proposed Intervenors counter that (1) the next federal elections in Arizona are over a year away, (2) the existing parties have already extended deadlines in this case multiple times, and (3) Proposed Intervenors "commit to follow any schedule set by this Court and to continue to work with the existing parties as such if granted intervention." (Doc. 41 at 11). The Court finds that Plaintiffs have not shown that prejudice or undue delay would result from granting the Motion to Intervene. Thus, even if the factors guiding this Court's decision under Rule 24(a) had not been met, the Court would exercise its discretion to grant permissive intervention.

### III.  CONCLUSION

Because this Court finds that Proposed Intervenors have met the requirements for intervention of right under Rule 24(a), the Motion to Intervene will be granted. Additionally, the Court will grant Proposed Intervenors' request to file their motion to dismiss pursuant to Rule 12(b)(6). (Doc. 41 at 12).

**IT IS THEREFORE ORDERED** that the Motion to Intervene (Doc. 19) is **granted**. The Court adds One Arizona and the Arizona Alliance for Retired Americans as defendants in this case.

**IT IS FURTHER ORDERED** granting Defendant-Intervenors leave to file an answer or other response to Plaintiffs' Complaint. Defendant-Intervenors shall have until **March 31, 2025** to file their answer or response.

Dated this 17th day of March, 2025.

Honorable Steven P. Logan
United States District Judge